Pioneer Savings and Loan Co. v. Fannie E. Edwards et al.

No. 812.

**Homestead—Mechanic's Lien—Mortgage—Contract to Furnish Labor and Material.**

An instrument by which a loan and building company agreed to furnish the labor and material required for the erection of a house on a homestead lot, retaining a lien on the premises for the moneys to be paid therefor, and which was executed by weekly payments made by the company to the contractor, there being no proof that the contract was a subterfuge to cover up a loan on the homestead, must be held a mechanic's lien contract giving a valid lien on the premises, and not a mortgage on the homestead.

Appeal from Dallas. Tried below before Hon. R. E. Burke.

*H. G. Robertson* and *W. M. Edwards,* for appellants.—1. Where a builder has entered into a contract with the owner and his wife to build a house on the homestead and such contract is in the form prescribed by law, with privy acknowledgment of the wife, such builder has the right to sub-let such contract and whether such sub-contract is made originally with the owner or builder, if agreed to and approved by the builder by virtue of, and in pursuance of the original contract, and with the understanding between the parties that the party entering into the original contract with the owner would pay for same, the understanding being that such builder would have a lien, then such lien will exist, notwithstanding the purpose of the parties entering into such arrangement is to enable the owner to secure the means for building the house. Lippencott v. York, 86 Texas, 276; Waters v. Texas Building & Loan Ass'n, 29 S. W. Rep., 63.

*Watts, Aldredge & Eckford,* for appellees.—1. The sole issue in this case was whether the Pioneer Savings and Loan Company loaned Edwards the money to build the house, or whether said company built said house. Said special charges were fully covered by the court's general charge and the evidence was ample to support the verdict. Seal v. Slate, 28 Texas, 498; Ruby v. Van Valkenburg, 72 Texas, 459; Jones v. Williams, 41 Texas, 404.

2. If in fact the transaction between appellant and A. C. Edwards was a loan of money and not for the construction of a house, appellant can have no lien on the homestead. Ellerman v. Wurz, 14 S. W. Rep., 333; Gaylord v. Loughridge, 50 Texas, 573; Lippencott v. York, 86 Texas, 283.

FLY, ASSOCIATE JUSTICE.—Appellant sued appellees to recover the amount of a note and to foreclose a mechanic's lien on a certain house and lot, the homestead of appellees. The contract upon which the foreclosure was asked is as follows:

"This agreement, this day made by and between the National Building, Loan and Protective Union, of Minneapolis, Minn., as party of the first part, and A. C. Edwards and Fannie E. Edwards, his wife, of the second part, witnesseth:

"1. The party of the first part hereby contracts and agrees with the parties of the second part to erect and construct for them a dwelling house according to the plans and specifications prepared by Architect Brunson, on that certain tract or parcel of land described as follows, to-wit: Lot No. 3, block No. 26, of Oak Cliff Addition to Dallas, Texas, as per map of record in volume 89, pages 1, 2, 3, and 4 of the records of deeds of Dallas County, Texas.

"The party of the first part is to furnish all labor and material necessary in the erection, construction and completion of said dwelling, but it is hereby expressly agreed and understood between all the parties to this contract that said party of the first part shall not expend on said building, or in anywise be responsible for, a greater sum than fifteen hundred dollars hereinafter mentioned, and that said parties of the second part hereby bind themselves to assume and discharge all the excess in the costs of said dwelling under such plans and specifications as may be furnished, over and above said sum of fifteen hundred dollars, as hereinafter mentioned, said party of the first part agrees to complete said building in good and workman-like manner on or before March 15, 1891.

"2. The parties of the second part hereby agree and contract to pay the party of the first part for the erection and completion of said dwelling according to said plans and specifications the sum of fifteen hundred dollars, evidenced by the promissory note of the parties of the second part, dated the first day of December, 1890, due seventy-seven months after date, payable to the party of the first part, with five per cent interest per annum, and five per cent premium, hereinbefore and after maturity, payable monthly, on or before the last Saturday of each month, principal, interest and premium payable at the office of the National Building, Loan and Protective Union at Minneapolis, Minn., any failure to pay interest or premium when due shall make principal, interest and premium at once due, and any waiver of such right shall not prevent the payee from enforcing the right upon any recurrence of the default. If said note is not paid at maturity, and is placed in the hands of an attorney for collection, the makers promise to pay ten per cent additional on the amount then owing as attorney's fees.

"3. Parties of the second part hereby contract and agree that the party of the first part shall have a lien to secure the payment of said contract price upon said dwelling to be erected as aforesaid, and upon the lot hereinbefore described upon which said dwelling is to be built;

said lien shall extend to and include the note hereinbefore described, and shall be in full force and vigor until said note has been paid in full.

"4. The party of the first part is to furnish all labor and material necessary in the erection, construction and completion of said building.

"5. The parties of the second part agree to pay all taxes which may be assessed against said property while said note remains unpaid, and in case they fail to do so, the said party of the first part shall have the right to pay the amount of said assessment, which amount so paid shall be a charge against the parties of the second part which the latter agree to pay the party of the first part upon demand, with twelve per cent interest per annum from the time said amount was paid by the party of the first part.

"6. The parties of the second part agree to keep said improvements to be erected on said lot insured during the time said note may remain unpaid for an amount not less than fifteen hundred dollars, in some good insurance company, to be approved by the party of the first part, loss, if any, to be payable to the party of the first part as its interest may appear. In case party of the second part fails to keep said property insured as aforesaid, the party of the first part shall be in the right to have it insured for its benefit as aforesaid; and the amount paid out by it shall be a charge in its favor against the parties of the second part, who agree to pay it to the party of the first part, on demand, with twelve per cent interest per annum from the time said amount was paid by said party of the first part.

"7. Any sum of money paid out as aforesaid under the fifth and sixth provisions of the contract shall be construed to be a portion of the consideration or price to be paid by the parties of the second part to the party of the first part for its agreement herein contained to build said dwelling as aforesaid; and such sum as aforesaid shall be secured by a lien upon the lot hereinbefore described, and the improvement therein contracted to be erected thereon."

The contract was signed by A. C. Edwards and his wife, Fannie E. Edwards, and was acknowledged by the husband, with consent of the wife given in the same manner as is required making a sale of the homestead. There was allegation and proof that there had been a reorganization of the corporation mentioned in the contract, and that appellant had succeeded to all its rights. There was a verdict and judgment for appellees.

The evidence shows that A. C. Edwards, desiring to build a house, made arrangements with J. M. Grant, a contractor, to build it, and not having the money to pay for labor and material, Edwards and wife entered into a contract with the loan company by which it agreed to furnish the labor and material. Grant, Edwards, and Elliot, the agent of the loan company, then met and had some agreement, all of which is not disclosed by the record, but which can be inferred from the subsequent conduct of the parties. Grant began the construction of the house, and under the agreement at the end of each week received a cer-

tain sum from the loan company for labor and material furnished. Grant had no legal contract with Edwards and wife, and of course had no lien on the property. He was merely the agent of the company that was paying for the labor and material. The fact that the transaction was designated a loan by appellant, or that the contract was denominated a mortgage, could not and did not alter the fact that the instrument was an agreement to furnish labor and material to build a house on the homestead. There is not a particle of testimony that indicates that the contract was a subterfuge to cover up a loan on the homestead, but the facts indicate that it was exactly what it purports to be. It would not matter who the reports of progress in the work were made to, or that the house was not erected exactly according to the plans furnished by Bronson, mentioned in the contract, the fact remains that appellant directly paid for the labor and material under a contract made for that purpose. It does not matter whether appellant actually did the work or actually bought the material; this may have been done by another, but if it paid for both as they were furnished from week to week, the transaction was not a loan. Had the money been furnished in bulk to Edwards, and he had disbursed it, the status of affairs might have been changed. The facts indicate only an intention to secure payment of the value of the labor and material actually expended in making the improvements, and not a subterfuge to cover up a transaction involving a loan on the homestead. Lippincott v. York, 86 Texas, 276.

The case before us is very similar to that of Clees v. Dallas Loan Association, 83 Texas, 50, the only marked difference being that the builder of the house gave a bond to the loan association for the faithful erection of the house, and that the suit was between the association and other lien holders. The lien of the loan association was sustained. In the case of Luzenberg v. Loan Association, 29 S. W. Rep., 237, decided by this court, in which a writ of error was denied by the Supreme Court, it is said, "We must look to the real transaction, and it is unmistakable that the intention of the owners of the lot was to contract to pay $2500 in time notes, bearing interest, to secure these improvements; that the means for making the same were to come from the association; and that the lien should exist on the premises for the contract price. The form in which this is done is immaterial." So it may be said in this case. In the case of Walters v. Loan Association, 29 S. W. Rep., 51, decided by the fifth Court of Civil Appeals, and writ denied by the Supreme Court, it is said, "it is not required that the person with whom the contract is made for such work and material shall be the very person who does the work or who owns the material."

There could be no lien for that portion of the money that did not go to pay for labor and material, but the fact of these sums being due for other things would not vitiate the contract.

We are of the opinion that the verdict had no evidence to support it, and the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 5, 1896.