BARBER et al. v. HERRING.   (No. 207–3298.)

(Commission of Appeals of Texas, Section B. March 16, 1921.)

**1. Contracts ☞164—Several instruments, executed same day, presumed to evidence single contract.**

Where two or more written instruments are executed on the same day, relate to the same subject-matter, and one refers to the other, the presumption is that they evidence but a single contract.

**2. Contracts ☞169—Surrounding circumstances admissible to explain contract.**

The situation of the parties, the object sought to be obtained as a common purpose, and the surrounding circumstances can and should be looked to in the interpretation of a contract.

**3. Contracts ☞147(1)—Intention object of interpretation of any contract.**

To arrive at the very intention of the parties is the object of investigation and interpretation of any contract.

**4. Mechanics' liens ☞73(2)—Materialmen held to have lien against homestead.**

A reference to a contract to erect a building on homestead land in a deed of trust given to a materialman on the same day created a lien in favor of the materialmen against the homestead; the trust deed and the contract constituting one contract.

**5. Evidence ☞419(2)—Consideration for trust deed properly shown by parol.**

Parol proof was admissible to show the consideration for a trust deed, and that it was money advanced to contractor constructing a building on the property.

**6. Assignments ☞31—Note reserving a lien may be given to third party by agreement.**

A note reserving a lien may be made payable to a third party by agreement.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by W. E. Herring, guardian, against A. C. Barber and others. From a judgment of the Court of Civil Appeals (203 S. W. 142), reversing a judgment for defendants, the latter bring error. Judgment of Court of Civil Appeals reversed, and that of district court affirmed.

A. J. Clendenen, Ike A. Wynn, and S. C. Padelford, all of Fort Worth, for plaintiffs in error.

E. H. Rotcliff and A. W. Christian, both of Fort Worth, for defendant in error.

KITTRELL, J. This case is reported in 203 S. W. 142. Before calling attention to certain fundamental principles, which appear to us to be controlling, it is logically in order to inquire what the situation of the

parties to the contract of June 29, 1910, was. Herring and wife on that day owned property on which they desired to build a home, but they were not financially able to do so. J. Thomas Franklin, a contractor to whom they applied to build the home, was not able to furnish the material and execute the contract without assistance, and he went to a firm designated for convenience hereinafter as the "Barber Company," which firm was engaged in the lumber and building material business, and which was able to furnish the material and money necessary to execute the contract. Not a dollar's worth of material or a dollar in money was furnished until the contract had been made. These facts are undisputed. The trial court believed A. C. Barber, the only witness who testified, and the Court of Appeals in no respect questioned the truth of his statements, but puts its holding on strictly legal grounds, deciding the case on a question of law.

It is clear that the "Barber Company" said they could and would furnish the material and money to build the house according to the plans and specifications submitted, for $2,249, provided they received two notes, for $600 each, due three years after date, bearing interest at 10 per cent., said notes to be a first and superior lien to that created by 25 notes, for $40 each, and one note, for $49, making a total of $1,049, said 26 notes being payable monthly to Franklin.

Such arrangements having been made, and Franklin being thereby assured of his ability to carry out the contract, he entered into a formal builder's and mechanic's lien contract with Herring and wife by Franklin, the contract to be completed on or before September 1, 1910, and Franklin was to furnish all material and labor and to construct and deliver the building at his sole expense.

In order to make clear what the contract was as to time and terms of payment, and the lien fixed, we quote in full the paragraph of the contract relating thereto:

"And the said improvements shall be delivered as aforesaid by said contractor on or before said date, free and clear of any and all liens and incumbrances for or on account of any labor or material furnished for same, except as hereinafter provided, to wit: Two promissory notes for the sum of $600 each, with interest at 10 per cent. per annum, of even date herewith, and due three years after date, which said notes shall be a first lien on said property; and 25 notes, due in monthly installments of $40 each, beginning August 1st, 1910, and one note for $49, payable one month after the last of the above 25 notes, all bearing interest from maturity at the rate of 10 per cent. interest per annum, and providing that the failure to pay any one of such installments shall mature each and all of said notes."

The contract then proceeds:

"And in consideration of the undertaking and faithful performance by the said contrac-

tor of his part of this contract the said George M. Herring and wife hereby agree and bind themselves, their heirs and assigns, to pay to the said contractor, his heirs and assigns, the full sum of two thousand two hundred and forty-nine dollars ($2,249), to be paid as follows, to wit: $1,200 cash; the balance in 26 monthly installments, beginning August 1, 1910, 25 of said installments being evidenced by promissory notes for the sum of $40 each, and one for the sum of $49, executed by the said George M. Herring, payable to the said J. Thomas Franklin, with interest from maturity at the rate of 10 per cent. per annum; and it is agreed that said notes shall be a second lien on said property, subject to a lien of $1,200 in favor of Barber Lumber & Mill Company."

One paragraph of said contract, immediately following the one in which the Barber Company is given the first lien, reads as follows:

"And should said George M. Herring and wife fail to pay said sum of $1,049, or any part thereof when due, then the same shall bear interest at the rate of 10 per cent. per annum from the date when due until paid, and should suit be brought thereon by said contractor, his heirs, representatives, or assigns, for any amount so due, the further sum of ten per cent. upon such amount as may be due shall be added as attorney's fees, and to secure the said contractor, his heirs or assigns, in the punctual payment of said sum, and each and every part thereof, a valid statutory lien is herein and hereby granted upon it and singular said real estate and improvements."

The contract was executed in constitutional and statutory form and the notes were executed, the same day, June 29, 1910. Franklin by instrument of same date in writing, transferred and assigned said 26 notes, together with the mechanic's lien to Barber Lumber & Mill Company. It is perhaps proper to say that the contract provided that the contract should not be assigned or sublet without the consent of Herring.

On the same day, June 29, 1910, Herring and wife executed to one I. W. Jarrell, as trustee, a deed of trust to secure the two $600 notes, in which instrument it was provided that said notes should be a prior and superior lien upon said property, and the following described notes to be second and subsequent thereto, and the 41 notes payable to Franklin above referred to and described are then specifically described. The house was built and turned over to the Herrings on September 15, and they accepted it in writing, saying in writing addressed to Barber Lumber & Mill Company:

"Mr. Franklin has completed his contract on my job to the perfect satisfaction of myself.

"Yours truly, Geo. M. Herring."

It is undisputed that the "Barber Company" not only furnished all the material, but paid the pay rolls every Saturday night,

and in every way kept their parol agreement with Franklin. The Herrings both died after paying all the 26 notes, and, the two $600 notes being unpaid, the guardian of the minor children brought the action, out of which this appeal arose, to cancel the lien created by the deed of trust.

The Barber Company answered, setting up the rights which it conceived it had under the contract above set forth, and prayed for a foreclosure of the lien. The prayer was granted. The guardian appealed, and the Court of Civil Appeals reversed and rendered the judgment, holding that the Barber Company had no lien.

[1] That careful examination of the opinion of the Court of Civil Appeals which both our duty and our respect for that court demand leads to the conclusion that that court overlooked a principle of law which seems to us peculiarly applicable to the situation presented by the record, viz.: Where several instruments are made part of one transaction, they will be read together, and each will be construed with reference to the other. Thus, where two or more written instruments are executed on the same day, relate to the same subject-matter, and one refers to the other, the presumption is that they evidence but a single contract. 9 Cyc. pp. 580, 581. The language used in 6 Ruling Case Law, p. 580, par. 240, is to the same effect:

"Moreover, the general rule is that, in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in course of the same transaction, are in the eye of the law one instrument, and will be read and construed together, as if they were as much one in form as they are in substance."

The opening words of the same paragraph (240) are obviously applicable to the question in hand:

"When different instruments are executed at the same time, but are all parts of one transaction, it is the duty of the court to suppose such a priority in the execution of them as shall best effect the intention of the parties."

The law has been so declared in Texas in Dunlap v. Wright, 11 Tex. 597, 62 Am. Dec. 506, Wallis v. Beauchamp, 15 Tex. 303, Taylor v. Hudgins, 42 Tex. 246, De Bruhl v. Maas, 54 Tex. 472, and other cases.

[2] It is elementary law that the situation of the parties, the object sought to be attained as a common purpose, and the surrounding circumstances can and should be looked to in the interpretation of the contract.

[3] It is likewise elementary that to arrive at the very intention of the parties is the object of investigation and interpretation of any contract.

[4] It would be an almost endless task to even attempt to analyze all the decisions relating to mechanics' liens which have been cited in the briefs, and even if the task could be and were accomplished, it is extremely doubtful whether they could all be reconciled, owing to changes in the statutes, and even in the Constitution, from time to time, and to the great diversity of facts presented in the various cases; hence we deem citation of a few authorities sufficient.

In Lippencott v. York, 86 Tex. 278, 24 S. W. 275, the following question, among others, was presented to the Supreme Court:

"Can the husband and wife create a lien upon the homestead by express contract for work and material used in constructing improvements thereon, by contracting for same in writing given in the manner required in making sale and conveyance of the homestead, without regard to the statutory mechanic's lien law?"

The Supreme Court answered the question in the affirmative.

In Downard et ux. v. National Loan, etc., 22 Tex. Civ. App. 570, 55 S. W. 981, appellants made a contract with one Hulen to build them a house for $1,500. Mechanic's lien and note were executed, with the understanding that appellee would take up the note and advance the money to build the house, which was done. The money was turned over to Downard, appellant, and he employed a foreman and hired day laborers, and when a firm of lumber dealers applied to Hulen to know when Downard would have money, Hulen told them to go ahead; that Downard would have the money, and he got it, and used it to build the house. While the house was partially erected before Downard actually received the money, yet all the arrangements were made with Hulen before any labor had been employed or any material furnished. Downard resisted the foreclosure of the lien. Foreclosure was decreed and Downard appealed. Chief Justice Conner, in the course of an able opinion, after referring to section 50, art. 16, of the Constitution (the homestead section), says:

"We do not understand that a contract and lien of the nature here shown are inhibited by our Constitution. * * * We think this provision of the Constitution should be construed in aid of the objects in view, and that a contract or lien, in whatsoever form it may appear, which excludes the idea of a mere loan, and is executed in accordance with the formalities required by the Constitution, with the real purpose and effect of thereby securing the necessary labor and material used in constructing the improvements upon the homestead lot, should be upheld."

He says also:

"The power is given the husband and wife to incumber their homestead for work and material used in constructing improvements thereon," and that "the exception is for the benefit of the family."

He cites Lippencott v. York, supra, and writ of error was denied by the Supreme Court. The contract was made with Hulen, who the owners knew was not a contractor, and would not, as he did not, build the house. They made a contract to get the money by fixing a mechanic's lien on the property, just as the Herrings in this case did.

As we understand the holding of the Court of Civil Appeals in the instant case, it is that Franklin had no lien because all the 26 monthly notes were paid off, and the "Barber Company" had no lien because they had no contract with the Herrings to furnish any material or do any work. In our judgment, when the uniformly recognized principles of law are applied to the transaction between the Herrings and Franklin and the "Barber Company," the two contracts became in contemplation of law one contract, and the Barber Company was as much a party to the mechanic's lien contract as if they had been signers of it. Pioneer Savings Co. v. Paschall, 12 Tex. Civ. App. 613, 34 S. W. 1001.

That the "Barber Company" was to furnish money and materials was unmistakably understood. That without their participation and assistance no house could have been built is made clear. The lien given them was in the contract recognized as superior to that of the notes given Franklin, and it is so declared in the deed of trust. All the parties were planning to a common end, with one, and only one, purpose in view, to build the house, and the building contract, the assignment of the monthly notes to Franklin, and the execution of the two $600 notes to the "Barber Company" were all one transaction, all the parts being so interlocked and interdependent that they cannot be separated from each other, without frustrating the entire intention and purpose of the parties. They are as much one contract in legal substance, as if all three had been written in one, and executed in triplicate form by all the parties.

In the case of Pioneer Savings & Loan Co. v. Everheart, 18 Tex. Civ. App. 192, 44 S. W. 885, the appellee gave his note in consideration of a contract on the part of appellant to erect a dwelling house on the homestead lots of appellee and for which he agreed to pay $2,300. The note and lien were executed and about $2,100 was paid appellee, which he used to build the house with. The object of appellee was to obtain money to build a home, and to pay for labor and material, and it was fully understood by all the parties that a lien should be given. The trial court refused a foreclosure, holding the appellant had no lien. The Court of Appeals of the Fifth District, speaking through Chief Justice Finley, held that the company was entitled to a lien under the facts stated. That holding was followed by Chief Justice Conner in the Downard Case, in which case,

as has been said, the Supreme Court refused a writ of error.

In Pioneer Savings Co. v. Paschall, 12 Tex. Civ. App. 613, 34 S. W. 1001, cited by Justice Finley in the Everheart Case, the same court, speaking through its then Chief Justice Lightfoot, held to the same effect as was held in the Everheart Case, though the Savings Company was not a signer of the contract. It made a contract to build the house, and entered into a contract with one Robbins to do the work, and Paschall and wife made the contract with Robbins, and it was carried out; the Savings Company furnishing the money. It was held that the Savings Company had an enforceable builder's lien.

We have examined every case cited by the Court of Civil Appeals, and conceding that all set forth the law correctly, none in our judgment is applicable to the case in hand. Much stress seems to have been laid by the court upon the holding in the case of Colleps v. Lumber Co., 185 S. W. 1043, the language of that court as follows being quoted:

"There is only one way known to the law by which one who furnishes material or labor for the erection of, or labor made upon, the homestead, to fix and secure a lien upon the same"— that is, by complying with article 5631, R. S.

Waiving the question of grammar in the quotation, and conceding for the sake of argument that the statement of law is. sound, we are of the opinion, for the reasons already given, that the statute has, to all legal and reasonable intents and purposes, been complied with. In that case the sole question was whether money due Colleps under a contract wholly oral, under which he was not to be paid until the work was done, was subject to garnishment, and whether the garnishing creditor's right was superior to that of Colleps and of laborers and materialmen. The court held it was.

We attach no importance to the recital that part of the payments on the building of the Herring home was recited as being "$1,200 cash," because as we have said, the law (and we may well add, justice) requires that all the instruments executed June 29, 1910, be construed as if every signer of each instrument had signed all the others. So construed, it is evident how the $1,200 was to be paid, and if there was any doubt remaining, it is entirely removed by the testimony of A. C. Barber, which was not objected to, and which shows that Herring signed both the $600 notes, and that all the instruments were executed on the same date, and relate beyond all question to the same matter.

[5] We know of no rule of evidence forbidding proof as to the consideration. Parol proof being admissible to show that an instrument, in the form of a deed on its face, was in fact intended as a mortgage, and that the real consideration is not expressed in the face of a deed, we see no reason why

it could not be shown by any instrument, or several instruments, which are in legal contemplation but one, any matter concerning consideration and manner of payment.

[6] That a note operating a lien may be given to a third party by agreement is settled law. Pinchain v. Collard, 13 Tex. 333; Senter v. Lambeth, 59 Tex. 261; Singletary v. Goeman, 58 Tex. Civ. App. 5, 123 S. W. 436. The facts of two cases are rarely alike. The changes and differences arising out of different combinations of facts are almost kaleidoscopic in variety, and for that reason the holdings in different cases differ, but neither the basic principles of law, or of moral honesty ever change.

We recognize the necessity of a strict construction of the constitutional and statutory provisions relating to liens on homesteads, but in our judgment to deny the plaintiff in error a lien under the facts presented in the record before us when the law, as we understand it, as applied to them, would be to so pervert protective and beneficial constitutional, and statutory enactments, as to operate a result that should not be brought about, unless the rules of law applicable to the facts are so imperative as to compel the judicial conscience to such action. The record before us presents no such case.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court be affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.