**STANDARD SAVINGS & LOAN ASS'N et al.**
**v. DAVIS et ux.**
**No. 4458.**

Court of Civil Appeals of Texas. Amarillo.
June 17, 1935.

Rehearing Denied July 8, 1935.

Leroy Smith, of Fort Worth, and Ayres & Ayres, of Floydada, for appellants.

H. D. Payne, of Floydada, and Lockhart & Brown, of Lubbock, for appellees.

MARTIN, Justice.

Appellant was, at all the dates mentioned herein, a building and loan association, reg-

ularly chartered and doing business under the laws of Michigan, with a permit to do business in Texas as a mutual building and loan association. Appellees, husband and wife, owned a homestead in the city of Floydada, Tex., and procured a loan from appellant to take up an indebtedness secured by a purported mechanic's lien against such homestead.

The pleadings are very lengthy, and will not be literally reproduced. Appellees filed suit against appellants and their pleadings sufficiently raised the issues: That the aforesaid mechanic's lien was void for uncertainty, and was barred by limitation; that the trust deed given in lieu of such lien was void, and the contract between the parties usurious. They asked for a cancellation of appellants' liens, and for a reduction of said indebtedness to the extent of the aggregate of all interest payments thereon, by reason of the alleged presence of usury.

Appellant, after answering the above, sought, by proper pleadings, to foreclose its claimed mechanic's and deed of trust liens against appellees' property.

Judgment of foreclosure was denied, the liens canceled as prayed for by appellees, but judgment was entered against the husband for the said debt, thus impliedly holding the contract untainted by usury.

The most hotly contested legal issue here is whether the purported mechanic's lien was void for uncertainty, because no plans or specifications for labor and improvements on such homestead were incorporated, either expressly or by reference, in the writing which granted a lien upon said homestead.

The material portions of such contract follow:

"Floydada, Texas, April 18, 1928.

"For value received, we promise to pay to the order of Higginbotham-Bartlett Company at its office in the City of Floydada County of Floyd Texas, Twenty five hundred and no/100 Dollars, payable as follows: $2500.00 on the First day of July, 1928 and $—— with interest from date hereof, until maturity, at the rate of ten per cent per annum, interest payable semi-annually as it accrues. * * *

"This obligation is given for building material agreed upon and for money to be loaned in advance to us, or upon our order, to employ labor, which labor and building material are to be used by us in the erection or repair of improvements on the following described tract of land owned by us in fee sim-

ple, free and clear of any encumbrances whatsoever, situated in Floyd County, State of Texas, and described as follows, to-wit:

"All of lot number 4, Block No. sixty seven (67), in the town of Floydada, Texas as shown by the map or plat of said Town of Floydada (Floyd City) recorded in Book 2F, Page 294, Deed Records of Floyd County, Texas.

"We hereby agree and contract that the payment of this obligation shall be, and is hereby secured by a mechanic's materialman's and contractor's lien upon said land and said improvements now situate thereon and to be placed thereon, and we hereby grant and convey unto the said Higginbotham-Bartlett Company an express mechanic's materialman's and contractor's lien upon said above described land to secure the above set out obligation."

This instrument was properly executed and acknowledged by appellees before the delivery of any material or performance of any labor, and is attacked here upon the sole ground that such instrument is void for uncertainty. It conclusively appears that on the date of its execution and acknowledgment, plans and specifications had been agreed upon between the parties and were then in existence; that all labor and material for the erection of such improvements were actually supplied or paid for by the lumber company; that such improvements were actually erected in exact accordance with said plans, were satisfactory to appellees, and were accepted in writing as satisfactory before the money was paid by appellants to take up such lien.

The portion of section 50, article 16 of our State Constitution, which controls the disposition of this question, is as follows: "The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except * * * for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead."

The right to a homestead, and to a materialman's lien on same for improvements thereon, if in writing, are both creatures of the Constitution. The one is no more sacred than the other. Undoubtedly, the authors of the above article had in mind the encouragement of real home ownership, knowing that a naked lot without a house was a shel-

terless possession for a family. We believe this constitutional provision should be liberally construed in the spirit of its exalted purpose. Nor do we share with appellees the view that the door for fraud against married women will be opened if their contention is not sustained. Here the appellees do not claim any fraud, accident, or mistake. They procured precisely what they bargained for. Their defense is the objection that plans and specifications (a child of the modern architect) were not made a part of their contract. The precedents are, in our opinion, against appellees' contention. We quote briefly from the authorities:

"We think this provision of the constitution should be construed in aid of the objects in view, and that a contract or lien, in whatsoever form it may appear, which excludes the idea of a mere loan, and is executed in accordance with the formalities required by the constitution, with the real purpose and effect of thereby securing the necessary labor and material used in constructing improvements upon the homestead lot, should be upheld." Downard et ux. v. Nat'l Loan & Inv. Co. of Detroit et al., 22 Tex. Civ. 570, 55 S. W. 981, 982.

"As relates to the statute requiring the 'terms' of the contract to be set forth, it recites that material of the agreed value of $397 is to be delivered to appellants for use in erecting, repairing, and improving the homestead, fixes the time of payment, the rate of interest to be paid, confesses and grants a lien to secure payment thereof, and describes the land upon which the improvements are to be situated. It is true the contract contained no itemization or description of the material, by piece, quantity, or article, but obviously it would be proper to show by parol testimony the quantity, pieces, or articles that were agreed on, and that they were thereafter actually delivered as the contract contemplated they would be, without affecting the force or validity of the lien." Lipscomb et ux. v. Adamson Lumber Co. (Tex. Civ. App.) 217 S. W. 228, 230.

"Hence we are of the opinion * * * that it was not essential to the validity of the contract between the Harrops and the contractor, or to the vitality of the lien, as provided for by article 5631, supra, that the plans and specifications should be included in and made a part of the written contract." Harrop et al. v. Nat'l Loan & Inv. Co. of Detroit et al. (Tex. Civ. App.) 204 S. W. 878, 880.

See, also, Grammar v. Hesperian B. & L. Ass'n (Tex. Civ. App.) 70 S.W.(2d) 220, error refused; Pioneer B. & L. Ass'n v. Everheart, 18 Tex. Civ. App. 192, 44 S. W. 885, approved by Commission of Appeals in Barber v. Herring, 229 S. W. 472, 475; Bosley v. Pease (Tex. Civ. App.) 22 S. W. 516, and Id., 86 Tex. 292, 24 S. W. 279; Rice v. Brown (Tex. Com. App.) 296 S. W. 495; Pioneer Sav. & L. Co. v. Edwards, 12 Tex. Civ. App. 556, 34 S. W. 192; Blackmon v. Texas Securities Co. (Tex. Civ. App.) 196 S. W. 590; Turbeville v. Book (Tex. Civ. App.) 226 S. W. 814, error dismissed; Bayless v. Standard Sav. & L. Ass'n, 39 Tex. Civ. App. 353, 87 S. W. 872.

■ In Collier v. Valley Bldg. & Loan Ass'n (Tex. Com. App.) 62 S.W.(2d) 82, relied on by appellees, the contract under attack failed to describe the homestead. Obviously a lien could not be created against real estate by a contract omitting a description of same. Here the essential elements of parties, consideration and subject-matter sufficiently, though in somewhat general terms, appear on the face of the contract. It was not in our opinion too indefinite and uncertain to create a lien against the real estate mentioned therein.

It is next contended that appellants had no lien, because the aforesaid contract had become barred by limitation and its deed of trust lien was void because Mrs. Davis, one of the appellees herein, had not legally acknowledged same as required by law. The original lien already discussed was properly acknowledged by her. It was extended by the terms of the trust deed, which appellees contend was never legally acknowledged by Mrs. Davis. The note was again extended in writing in 1933. It thus appears that appellants had preserved, by extension, the original note and mechanic's and materialman's lien, concerning the validity of which no question is made, save as to its uncertainty, already disposed of. The original note and said lien were, on their face, barred by limitation when appellants' suit was instituted. We do not consume space in discussing whether or not the acknowledgment of appellee Mrs. Davis to the trust deed was valid. The present validity of the original mechanic's lien is not in the least affected by the fact that the trust deed extending such has not been properly acknowledged by the wife. Under facts essentially the same as those of the present case, this identical question was re-

cently presented to and decided by this court, writ denied. We quote:

"The record here affirmatively and conclusively shows that notes secured by valid mechanic's liens were renewed in writing between the parties before being barred by limitation, and finally became a part of the last note for $3,200, secured by a deed of trust. As between the original parties, these renewals were valid and binding, whether acknowledged and recorded or not. Watson v. First National Bank of Coleman (Tex. Com. App.) 285 S. W. 1050; Jolly v. Fidelity Union Trust Co. et al., 118 Tex. 58, 298 S. W. 530, 10 S.W.(2d) 539.

"The lien by which a debt is secured is incidental to the debt, and written extension of maturity date of debt operates as an extension of the lien also, unless there is an agreement to the contrary. Farmers Life Ins. Co. v. Wolters (Tex. Com. App.) 10 S. W.(2d) 698; Jolly v. Fidelity Union Trust Co., supra. There are other authorities to the same effect, but these sufficiently show that the jury's findings with respect to facts assertedly showing the invalidity of the wife's separate acknowledgments to the deeds of trust in question were immaterial under the court's findings. The instruments may have been invalid as conveyances of the alleged homestead or separate property right of the wife, but sufficient to evidence an extension of the original indebtedness. The foreclosure was of the original mechanic's lien, not of any trust deed. The jury's findings affect only the deeds of trust. We overrule appellants' contention that limitation had run against appellants' debt." Pittman et ux. v. Continental Southland Savings & Loan Ass'n (Tex. Civ. App.) 75 S.W.(2d) 991, 993.

See, also, Hill v. Wright (Tex. Civ. App.) 30 S.W.(2d) 812; Robertson v. Lee (Tex. Com. App.) 249 S. W. 217; Thomason v. Pacific Mutual Life Ins. Co. (Tex. Civ. App.) 74 S.W.(2d) 162; McNeal v. McCraw (Tex. Civ. App.) 15 S.W.(2d) 139; Benavides v. Houston Ice & Brewing Co. (Tex. Civ. App.) 224 S. W. 385; Chambers & Co. v. Little (Tex. Civ. App.) 21 S.W. (2d) 17.

■ The original indebtedness herein was validly extended in writing, which as between the immediate parties did not have to be acknowledged by the wife. The last extension was in 1933. Appellees' suit was filed in 1934. Limitation had not run against a foreclosure of the original debt and lien, same was valid, and the court err-

ed in refusing appellant a decree of foreclosure.

The deed of trust antedates the written transfer of the original lien copied in part above, and the suggestion is made that the parties could not validly contract concerning a note not then owned by appellant. The record as a whole shows that all parties contemplated that the transaction would be handled in this way, and that in legal effect the instruments were a part of one contemporaneous transaction.

■ Finally, it is contended by appellees that the contract was usurious, and that the court erred in not crediting all interest payments on the principal. In all its controlling elements, the contract was the usual Texas building and loan contract, specifically authorized by statute. It was not a scheme to evade the usury laws, as has been pointedly held in Wood v. Continental Sav. & Bldg. Ass'n (Tex. Com. App.) 56 S.W.(2d) 641. The note on its face bore 7⅖ per cent. per annum, payable monthly. It appears without contradiction that, calculated on a monthly partial-payment basis, the loan drew less than 10 per cent. per annum. The only debatable question is raised by the presence, in the trust deed, of the clause presently quoted. After providing for a fire insurance policy and in case of fire, the trust deed authorizes the appellant " * * * to collect said insurance money, and at its option to declare the money hereby secured, due and payable immediately, and to apply said insurance money to the payment of the principal debt hereby secured, together with all interest, stock dues, fines, taxes, assessments and other sums accrued as herein provided for, or to apply the same in payment of future dues, interest and all other assessments and charges herein provided to be paid, or to the erection of new buildings on said premises * * *."

It was pleaded and proven by appellant that this 'clause was inserted " * * * to enable it to pay out of any insurance money that it might collect for damage or loss of the premises given as security the stock dues and interest which might thereafter mature subsequent to the collection of said insurance money and up until final application of said insurance money, either to rebuild the damaged premises or toward payment of the principal debt so secured and not otherwise. Said clause was not intended by defendant Association as a means of collecting more than the legal rate of interest prescribed by the laws of Texas."

We do not pause to discuss this, since we have concluded that viewing the contract as a whole and imputing to the parties an intent to make a legal contract, a reasonable and fair interpretation of same evidences an intent to comply with our usury laws. We here set out literally some of the provisions of said contract, which to our mind, justify this conclusion:

"The borrower shall have the right to repay his or her loan at any time on giving thirty days written notice of his or her intention so to do, and may have the withdrawal value of his or her shares applied in reduction of loan, or may pay the loan in full and continue to carry the shares."

The note after providing for interest at 7⅘ per cent. per annum, further provides:

"Such (stock payments) to be continued until said shares shall have reached the value of $100.00 each, or until the undersigned shall have made 120 monthly payments thereon, at which time said shares shall be accepted in full payment of this obligation, provided all interest shall have been paid, and provided that if said shares of stock shall at the expiration of said 120 months, have reached a value in excess of the amount of this note, the undersigned shall receive in cash the difference between the value of said shares and the amount due on this note."

"If this note be sued upon, or if said real estate be advertised for sale under the power contained in said deed of trust, said stock shall then be cancelled in part payment of this note; and in the event that any court of competent jurisdiction shall hold said stock contract invalid, then the liability of said Association by virtue of said stock shall cease and the balance due on this note, other than attorney's fees, trustee's fees, moneys paid for taxes or insurance premiums or repairs on the property covered by said trust deed, with interest thereon as provided in said trust deed, *shall be a sum equal to what would be due on a partial payment loan of like amount made at same time at 10% interest per annum, payable in like manner,* etc."

"And if upon the surrender and cancellation of said stock in settlement of this note, as herein provided, whether at the time of said fixed maturity period or at *any other time,* it shall appear that more shall have been paid to said Association by the undersigned, other than attorney's fees, trustee's fees, insurance, taxes or repairs with interest thereon as elsewhere provided, than shall be necessary to repay this note in full, calculated as herein provided (namely, on 10% partial payment plan), *then said Association shall repay to the undersigned all such extra payments,* together with interest thereon at the rate of 10% per annum from date of such respective overpayments."

Under the above stipulations, particularly the latter clause quoted above, appellant could not collect more than 10 per cent. Suppose there is a fire; appellees can mature their debt by surrendering their stock, have its then value applied on their note, and "* * * at the time of said fixed maturity period *or at any other time* it shall appear that more shall have been paid to said Association by the undersigned, other than attorney's fees, trustees' fees, insurance, taxes or repairs with interest thereon as elsewhere provided, *than shall be necessary to repay this note in full,* calculated as herein provided (that is to say, on a 10% partial payment basis), then said Association shall repay to the undersigned all of such extra payments, together with interest thereon at the rate of 10% per annum from date of such respective overpayments."

The present state of the law is now too well settled to require any further discussion. Burnette v. Realty Trust Co. (Tex. Civ. App.) 74 S.W.(2d) 536; Braniff Inv. Co. v. Robertson (Tex. Com. App.) 81 S.W. (2d) 45; Shive v. Braniff Inv. Co. (Tex. Civ. App.) 68 S.W.(2d) 564; Marble Savings Bank v. Davis (Tex. Com. App.) 80 S.W.(2d) 298.

Nor do we think our present building and loan statute (Vernon's Ann. Civ. St. art. 852 et seq.) unconstitutional, as contended by appellees. This has been impliedly, if not expressly, held in Hatcher v. Continental Southland Sav. & Loan Ass'n (Tex. Com. App.) 80 S.W.(2d) 299, and the Wood Case, supra.

The judgment of the trial court denying a foreclosure is reversed and rendered, and in all other respects affirmed.