## GRAY v. SHAUNFIELD.

### No. 2800.

Court of Civil Appeals of Texas. Waco. June 24, 1948.

Rehearing Denied July 15, 1948.

Dodson & Reagan, of Marlin, for appellant.

Robert D. Peterson, of Marlin for appellee.

HALE, Justice.

This suit grew out of a written contract to drill a well and the vain hope that such well might result in the discovery and production of oil. Appellee attached a copy of the contract to his petition and alleged in substance that he had complied with the provisions thereof by drilling the well at the request of appellant to a depth of 1,185 feet and that he was entitled to be com-

pensated. for the services so rendered at the rate of $2 per foot. Appellant answered with a general denial and extensive pleas to the effect that appellee had not drilled the well in compliance with the terms of the contract sued upon or with the verbal representations made by him while the drilling was in progress in that he had failed to change from a rock bit to a fish-tail bit and by reason thereof he had drilled the well through the formation known as the Buda lime without knowing he had reached the same and thereby ruined the well and rendered it worthless.

The case was tried before a jury. Upon the conclusion of the testimony appellant seasonably presented his motion for a peremptory instruction upon the ground that the undisputed evidence showed the well had not been drilled in accordance with the terms of the contract. The court overruled the motion and appellant excepted. The case was then submitted to the jury on four special issues, over appellant's objection that the evidence did not raise any material issue of fact for the determination of the jury. In response to the issues so submitted the jury found that. (1) appellee drilled the well for appellant in accordance with the terms of the written contract sued upon, (2) appellee, at the request of appellant, drilled the well to a depth of 1,185 feet, (3) while appellee was drilling in the formation known as the Eagle Ford Shale, he did not tell appellant he would know when he reached the top of the Buda lime without changing from a rock bit to a fish-tail bit and (4) appellant did not rely upon appellee's statement that he would know when he reached the top of the Buda lime without changing bits. Thereupon, the court rendered judgment in favor of appellee for the sum of $2,370 and hence this appeal.

Appellant says the judgment of the court below should be reversed and judgment should be here rendered denying appellee any recovery herein because the undisputed evidence in the case shows the well was not drilled in accordance with the terms of the contract sued upon and the finding of the jury with respect to such pleaded issue is not supported by the evidence.

The written contract provided in substance as follows: appellee agreed to furnish a Rotary drilling rig and all necessary tools and labor to drill a well of sufficient size to carry a six inch casing at a location to be made by appellant; appellee agreed "to drill said well to the formation known as the Buda lime to the approximate depth of 1125 feet and to set, at his own cost and expense, casing to be furnished by party of the second part (meaning appellant) in said well on top of the Buda lime for a consideration of $2.00 for each foot of the depth of said well"; appellee agreed to begin drilling within fifteen days and "to prosecute the drilling of said well with reasonable diligence until said well is completed" and to comply with Federal and State laws relating to taxes and protection of employees; appellant agreed "to furnish the necessary casing to case said well to the top of the Buda lime and upon the completion of said well, according to the terms of this contract, he agrees to pay to party of the first part the sum of $2.00 per each foot of the depth to which said well is to be drilled"; and both parties agreed "that after the well is drilled to the Buda lime and casing set, that party of the first part will bail and clean said well and install tubing and rods in said well for pumping, in case said services are requested by party of the second part, and party of the second part agrees to pay party of the first part for such services on the basis of $3.50 per hour, for the time required to perform such services."

Immediately after the contract had been signed appellant selected the location of the well and appellee began the drilling operations as therein contemplated. The undisputed evidence shows the well was drilled to a depth of approximately 1,100 feet when appellant caused a geologist to make a test of the formation at that depth. The geologist was of the opinion that the drilling operations had already proceeded through the Buda and Del Rio formations and had reached the top of the Georgetown. Following a discussion between the geologist and the parties to the contract, appellee drilled further into the Georgetown formation at the request of appellant but

the well was finally abandoned without setting the casing. However, appellee pleaded and testified in effect that his failure to set the casing as contemplated by the contract was due to appellant's failure to furnish the casing in accordance with the terms of the agreement. It thus appears to us that a correct disposition of the appeal turns upon whether or not, as a matter of law, the sole responsibility of determining when the drill reached the Buda lime rested upon appellee under the terms of the contract, as contended by appellant. If so, the judgment should be reversed; otherwise, it should be affirmed.

It is elemental that the intention of the parties to a contract controls its interpretation. Barber v. Herring, Tex. Com.App., 229 S.W. 472; Reconstruction Finance Corp. v. Gossett, 130 Tex. 535, 111, S.W.2d 1066. Where such intention is made clear and plain by the language used in a written contract, extrinsic evidence is incompetent to prove a contrary intention. Colquitt v. Eureka Producing Co., Tex. Com.App., 63 S.W.2d 1018; Gulf Production Co. v. Spear, 125 Tex. 530, 84 S.W.2d 452.

However, where the language used in a written contract is such as to leave the intention of the parties in doubt, thereby rendering the contractual obligation assumed by either party fairly susceptible of more than one interpretation, the court, in ascertaining the true intention of the parties with respect thereto, may and should consider the subject matter of the contract, the surrounding circumstances existing at the time when the same was executed and the practical interpretation, if any, subsequently placed thereon by the parties. Galveston H. & S. A. R. Co. v. Johnson, 74 Tex. 256, 11 S.W. 1113; Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 85 A.L.R. 391; Lone Star Gas Co. v. X-ray Gas Co., 139 Tex. 546, 164 S.W.2d 504.

Furthermore, when a written contract is ambiguous or so uncertain in its terms as to render the contractual obligation assumed by either party fairly susceptible of more than one interpretation, the true intent and meaning thereof becomes an issue of fact if the extrinsic evidence relating thereto is in dispute or is such that reasonable minds may differ in the ultimate conclusions of fact to be drawn therefrom. C. H. Taylor v. Hamilton McNutt, 58 Tex. 71; Ormsby v. Ratcliff, Tex.Civ.App., 22 S.W.2d 504, pt. 2; Id., Tex.Com.App., 36 S.W.2d 1005; Baker v. Powell, Tex.Civ.App., 105 S.W.2d 289; Ellisor et ux. v. Kennedy, Tex.Civ.App., 128 S.W.2d 842, pt. 1, er.ref.

From the language used in the contract before us, we think it is clear that both of the parties thereto mutually intended for the well to be drilled only to the top of the Buda lime. While it was contemplated that such formation would be encountered at the approximate depth of 1,125 feet, there was no express provision in the contract as to how or by whom it should be determined when the drill had reached that formation. There was no provision that the well should be drilled, either in whole or in part, with a rock bit or a fish-tail bit, or that any test or tests should be made by either or both parties for the purpose of determining the various geological formations to be encountered as the drilling operations progressed. Consequently, from the language used in the contract as a whole, we cannot say as a matter of law that appellee thereby assumed the sole responsibility for determining when the drill reached the Buda lime.

There was evidence to the effect that both parties were present at intervals while the drilling operations were in progress and each washed samples taken from the well from time to time in their respective efforts to determine the various geological formations encountered. Appellant testified in effect that he made suggestions to appellee during the drilling operations and that they had no arguments or disagreement. He also testified that while the well was being drilled through the Eagle Ford Shale appellee stated in substance that he would know when they reached the top of the Buda lime without changing from a rock bit to a fish-tail bit and that appellant relied upon the statement so made. Appellee denied making such statement and testified to facts which, if true, tended to show that both parties were each exercising their best

judgment in their joint and mutual efforts to identify the formation through which the well was being drilled.

In our opinion, reasonable minds might well conclude from the evidence as a whole that it was not the intention of the parties to this contract thereby to impose upon appellee the sole responsibility of determining when the drill reached the Buda lime, if it did so, but that the extent of his intended obligation in that regard was to exercise due care and reasonable cooperation with appellant in their joint efforts to determine such fact. That being true, we cannot hold the undisputed evidence to show conclusively that the well was not drilled by appellee in substantial compliance with the terms of the contract sued upon, so as to defeat any recovery thereon. On the contrary, we think the evidence was sufficient to sustain the findings made by the jury and that such findings, when considered in the light of the entire record, authorized the recovery sought and secured by appellee.

Accordingly, all of appellant's points are overruled and the judgment of the trial court is affirmed.