Stanley v. Westrop.

---

LARDNER C. STANLEY AND WIFE v. THOMAS E. WESTROP.

The law will not apply a general payment, nor authorize the creditor to apply it, without the consent of the debtor, to the payment of usury.

General payments made on a usurious contract will be imputed to the principal sum, and not to the usurious interest.

A note given for the usurious interest computed on a previous loan is illegal and void.

Where general payments on a usurious contract equal the principal sum loaned, a note given for the excess of the principal and usurious interest over the amount paid, is a note for usurious interest, and is illegal and void.

Stanley v. Westrop.

Error from Harris. Tried before the Hon. Peter W. Gray. Suit by the defendant in error against the plaintiffs in error, on the note of the latter, payable to the former, dated at Houston, June 21st, 1853, for $242 50, due Oct. 1st, 1853. Answer, that the consideration for which said note was given, was unlawful and usurious interest, upon a note for more than twelve per cent., which note has been paid off and discharged. It appeared from the statement of facts, that on the 1st of October, 1851, plaintiff loaned defendant Stanley $500, for which he took his note, payable January 1st, 1852, for $537 50 ; the $37 50 being for interest at the rate of two and a half per cent. a month, which was agreed on. Stanley paid the plaintiff between five and six hundred dollars. When the note sued on was given, the interest at two and a half per cent. per month was calculated on the $500 down to the date of the note sued on, and then the principal, with the $37 50, and the interest were added together, and the payments made by the defendant Stanley were deducted, and the amount specified in the note sued on was found due ; and Stanley, by agreement, got his wife to sign the new note with him and took up the old note with a deed of trust on the negro. " We did not split the interest from the principal, in making the calculation, to ascertain the amount for which the note sued on should be given, but the calculation was made as before stated, and this note was given for the amount due on the old note, calculating interest thereon at the rate of two and a half per cent. per month."

The jury were instructed that if they believed from the evidence, that the note in suit was given in consideration of the surrender of a former note and deed of trust, with an extension of time on the balance due on the former note, although it included usurious interest on the former note, the plaintiff was entitled to recover the amount of the note sued on, and also interest on it.

Verdict and judgment for the plaintiff for the amount of the note sued on and interest thereon.

Motion for new trial overruled. The parties disagreed in some respects, as to the statement of facts, and the Judge, in certifying the same, stated, that although the charge of the Court, in the abstract, might be, and he believed was, wrong, yet on the facts, the law of the case seemed to him to be in favor of plaintiff, and therefore the new trial was refused.

*J. W. Henderson*, for plaintiffs in error, cited Chandler v. Fulton, 10 Tex. R. 2 ; Booker v. Gregory, 7 B. Mon. 439.

*Palmer & Jordan*, for defendant in error. The note sued on was not usurious, as it did not stipulate for a greater rate of interest than is allowed by law. (Hart. Dig. Art. 1609 ; Chadbourn v. Watts, 10 Mass. R. 121 ; Wales v. Webb, 5 Cowen, R. 154 ; Fowler v. Garrett, 3 J. J. Marsh. 687.)

The note sued on was for the balance of principal on the note for $537 50, and not for the interest on that note, for the interest had been extinguished by the payments made by appellant anterior to the date of the note sued on. (Treadwell v. Moore, 34 Maine (4 Red.) 112 ; Hearn v. Cuthbert, 10 Tex. R. 216 ; Moss v. Adams, 4 Ired. Eq. 42 ; Emery v. Tichout, 13 Verm. 15.)

The intention of both parties to apply the payments made prior to the date of the note sued on to the interest on the $537 50 note, may be inferred from the nature of the transaction, and from the giving of the new note. (West Branch Bank v. Morehead, 5 Watts & Serg. 542.)

WHEELER, J. It appears indisputably by the evidence, that the original contract was for the payment of a greater rate of interest than is allowed by law ; and, consequently, it was illegal and void for the whole amount of interest stipulated for. (Hart. Dig. Art. 1609.) The agreement to pay usurious interest was not expressed in the face of the note, but, it seems, was verbal. In taking up the old and giving the new note, the aggregate amount of principal and interest, computed at the

usurious rate agreed upon, was ascertained, the payments deducted from the sum, and the new note given for the balance due. There is no evidence of any agreement to appropriate, or of any appropriation of the payments to the usurious interest, by either party; and the question is how the law will apply them in such case. In Booker v. Gregory, the Court of Appeals of Kentucky said, "The doctrine we consider as set-"tled, that all sums paid by the borrower to the lender, al-"though at the time of the payment denominated usury, will be "treated as payments of the principal and legal interest, at "the election of the borrower." (7 B. Monr. 448.) The law, it seems, will apply the payment to the principal and legal interest, although intended, at the time, to be applied to the usury. (Ib.; Wood v. Gray's Ex'r, 5 Id. 92—3.) In the absence of authority it would seem clear on principle, that the law will not make an application of a payment to effectuate an illegal contract. Such an application would involve a contradiction in terms. In Matossy v. Frosh, (9 Tex. R. 610, 612—613,) the general rules respecting the appropriation of payments were adverted to; but it was not proposed, as it was not necessary in that case, to settle definitively, in what manner the law will make the appropriation, where neither the creditor nor debtor makes it at the time; or what restrictions, or qualifications, the law imposes on the right of the creditor, where the debtor neglects to exercise his option. The subject was elaborately examined by Judge Story in the case of Goss v. Stinson (3 Sumner, 98.) "There is no doubt (he says), that "the doctrine of the common law, as to the appropriation of "indefinite payments, has generally been borrowed from the "Roman law;" and he expresses regret that there has been any departure in any of the authorities, from its true results. He quotes with approbation the language of Sir William Grant, in Clayton's case (1 Meriv. R. 604,) to the effect that, according to the Roman Law, the option given, in the first place to the debtor and to the creditor in the second, was to be exer-

cised at the time of payment, as well in the case of the creditor, as in that of the debtor. " If neither applied the payment, the " law made the appropriation according to certain rules of " presumption, depending on the nature of the debts, or the " priority in which they were incurred. And as it was the ac- " tual intention of the debtor that would, in the first instance, " have governed ; so it was his presumable intention, that was " first resorted to as the rule by which the application was to be " determined. In the absence therefore of any express declara- " tion by either, the inquiry was, what application would be " most beneficial to the debtor? The payment was, consequently, " applied to the most burthensome debt,—to one that carried in- " terest, rather than to that which carried none,—to one secured " by a penalty, rather than to that which rested on a simple " stipulation ; and, if the debts were equal, then to that which " had been first contracted." (Id. 110.) Judge Story con- cludes, " Notwithstanding there are contradictory and conflict- " ing authorities on this subject, in the English and American " Courts, I can not but think, the doctrine of the Roman Law " is, or, at least ought to be held, and may well be held, to be " the true doctrine to govern our Courts. There is a great " weight of Common Law authority in its favor ; and in the " conflict of judicial opinion, that rule may fairly be adopted " which is most rational, convenient, and consonant to the pre- " sumed intention of the parties. If the creditor has a right, in " any case, to elect to what debt to appropriate an indefinite " payment, it seems to me that can only be, when it is utterly " indifferent to the debtor, to which it is applied ; and then, " perhaps, his consent that he may apply it, as he pleases, may " fairly be presumed. Mr. Justice Cowen, in his learned and " elaborate Opinion, in Patterson v. Hull, (9 Cowen R. 747 ; " Id. 765 to 773,) has examined and criticised all the leading " authorities, and manifestly leans in favor of adopting the doc- " trines of the Roman Law throughout. I confess myself " strongly inclined the same way ; and shall yield only to au-

" thorities which I am bound to follow." (3 Sumner, 111, 112.)

The subject was examined by the Supreme Court of North Carolina, in an elaborate Opinion by Chief Justice Ruffin, in the case of Moss v. Adams (4 Iredell, 42,) cited by counsel for the appellee. The English and American authorities were examined, and though the case does not contain the principle for which it is cited in argument here ; that is, that where the debtor does not exercise his option, the creditor may make the application, even to the extinguishment of usurious interest, the Court arrive at a conclusion in respect to his rights very different from that maintained by Judge Story, in the case from which we have quoted ; that, if the debtor fails to make the application, the creditor may do so at any time afterwards before suit ; and holding that, where neither debtor nor creditor makes the application of the payment, the law will apply it to that debt for which the creditor's security was most precarious. The learned Judge, however, in concluding his Opinion, says, " Perhaps it had been well to adhere to the original " rule of the Civil Law, as more simple in itself, easily under-- " stood, and, in its uniform operation, doing as much justice, " upon the whole, as any others, however modified." Still, he thinks the exceptions to it in the points involved in that case, so firmly established in the tribunals of the Common Law, that the Court has no choice but to adopt them. (Id. 53.) Where we find so great a contrariety of opinions and decisions, we might feel free to adopt the conclusions which seem to us most to accord with reason and justice, and which appear to command the approbation even of Courts, which have felt themselves constrained by the force of authority, to depart from them. It is admitted on all hands, that the debtor has the absolute right to make the application, if he sees proper to exercise it. If he omits to do so, and it is left to the law to make it for him, it ought, it would seem, to be made in accordance with the presumed intention of the debtor. As that intention, if express, would confessedly control the application in all

cases, it ought equally to do so, it would seem, where it may be implied, or can fairly be inferred. But it will suffice to dispose of the present case, that the law will not make the appropriation, nor authorize the creditor to make it, without the consent of the debtor, to the payment of usury.

Applying this principle to the case before us, it will be seen that the consideration for the note in suit was the illegal interest exacted upon the original loan ; and it is, consequently, usurious. Where the original contract is usurious, any subsequent one, made to carry it into effect is also usurious, and its validity will be in like manner affected. Every subsequent security, given for a loan originally usurious, however remote, or often renewed, will be affected by the illegality of the original consideration. (Bride v. Hubbard, 15 Mass. 92 ; Walker v. The Bank of Washington, 3 Howard U. S. R. 62.) The law will not enforce a contract which is illegal and void. The judgment must therefore be reversed, and the cause remanded.

Reversed and remanded.