### RICE et al. v. BROWN.   (No. 799–4817.)

Commission of Appeals of Texas, Section B.
June 25, 1927.

**1. Appeal and error ☞931(3)—Finding by trial court supporting judgment cannot be imputed to trial court, where evidence is insufficient.**

A finding supporting the judgment cannot be imputted to the trial court, where the evidence is insufficient to support such an implied finding.

**2. Appeal and error ☞1094(1)—Court of Civil Appeals can pass on sufficiency of evidence to support finding, while Supreme Court can only ascertain whether there is a fair conflict.**

It is exclusive province of Court of Civil Appeals to pass on sufficiency of evidence to support finding, while the Supreme Court is concerned with such matter no further than to ascertain if there is a fair conflict in the evidence.

**3. Payment ☞41(1)—Intention of parties controls judicial application of payment not applied by either party.**

Where neither debtor nor creditor makes application of payment, the application which the court will make is controlled by intention of the parties expressed or implied from the contract and surrounding circumstances.

**4. Payment ☞41(3)—Payment held one properly to be applied on debt secured by mechanic's lien on homestead.**

Though, at the time of payment in cash not applied by the parties, there was an open account for extras which the contract provided should be paid in cash, yet such payment being twice the amount of such open account, so that it could not be intended that the payment as a whole should be applied on such account, finding in effect of the Court of Civil Appeals that the implied intention of the parties was to apply the payment to the larger debt secured by mechanic's lien contract on homestead was justified.

**5. Mechanics' liens ☞161(1)—Mechanic's lien contract held to contemplate lien on homestead only for the note for contract price of building and not for extras.**

Though by mechanic's lien contract lien may be given on homestead for extras in construction of improvements thereon, contract in issue *held* by its terms to limit lien to note for contract price plus any payments for insurance or taxes made necessary by owner's default, notwithstanding specifications made part of contract by reference reserved to owner right to make changes involving additional costs for extras.

**6. Payment ☞41(1)—Intention of parties gathered from surrounding circumstances, rather than rule of equity, controls court's application of payment.**

It is not so much a rule of equity that controls action of the court in applying payments not applied by the parties, as it is the ascertainment of the intention of the parties from all the circumstances surrounding the payment.

**7. Appeal and error ☞1082(1)—Ruling in Court of Civil Appeals against defendant in error, in absence of application by him for writ complaining thereof, may not be reviewed by Supreme Court affirming judgment of reversal and remand.**

The Supreme Court, in affirming Court of Civil Appeals' judgment of reversal and remand, has no authority to review a ruling of that court against defendant in error that his wife was not a necessary party; he having made no application for writ complaining thereof.

Error to Court of Civil Appeals of Eleventh Supreme Judicial District.

Suit by Harry L. Rice and others against C. S. Brown. Judgment for plaintiffs was reversed, and the cause remanded by the Court of Civil Appeals (290 S. W. 784), and plaintiffs bring error. Affirmed.

Wagstaff, Harwell & Wagstaff, of Abilene, for plaintiffs in error.

Kirby, King & Overshiner, of Abilene, for defendant in error.

SPEER, J. The writ of error herein has been granted to the decision of the Court of Civil Appeals for the Eleventh District wherein it reversed and remanded the judgment of the district court. 290 S. W. 784. It was a suit upon a promissory note executed by C. S. Brown, and to foreclose a mechanic's lien executed by Brown and his wife, Jewel Brown, securing, it is contended, the note and certain "extras" as well. Mrs. Brown, though named in the original petition, was dismissed in the amended original petition, and the court proceeded to trial, rendering judgment in favor of the plaintiff.

No further statement of the case is necessary, since the questions to be decided are

pointedly made in the assignments of error, which we will now consider.

[1, 2] By the first assignment it is complained that the Court of Civil Appeals erred in reversing the judgment of the trial court in that particular wherein he applied a certain $3,000 payment to the open account for extras; the contention being that the issue of plaintiff in error in having made such application not having been submitted nor requested to be submitted, it will be deemed to have been found in such way as to support the judgment. This rule is quite accurate, and, indeed, is statutory; but it has no application to support the assignment of error for two reasons: First, as demonstrated by the Court of Civil Appeals, the evidence of plaintiff in error in this respect is not sufficient to support such an implied finding. We can add nothing to what has been said by that court upon this point. In the next place, if such finding should be implied, it nevertheless would not be conclusive, and the Court of Civil Appeals would be authorized, as it did in effect do, to set aside such finding, and to remand the cause. It is the exclusive province of the Court of Civil Appeals to pass upon the sufficiency of the evidence to support a finding, and we are not concerned with such matter further than to ascertain if there be a fair conflict in the evidence.

[3] The principles governing the application of payments are well known and easy of statement. First, the debtor has the right to make application of his payment, but in the event he fails to make such application, the creditor then may do so. In the event neither party makes application of the payment, the court will apply it. And at this point it is well to notice the considerations that control such judicial application. The fundamental consideration underlying this rule is that of giving effect to the intention, or supposed intention, of the parties.' The law always has a supreme respect for the intention of the parties in interpreting contracts of any sort. If that intention is expressed, it of course governs. It nevertheless is respected to the same extent if that intention can be implied or found from the contract and the surrounding circumstances. All the artificial rules governing the application of payments by the court are founded upon the belief that they aid in the discovery of the supposed real intention of the parties. The general principle we are discussing is well stated in Ruling Case Law (volume 21, p. 99, § 105):

"When the intention of the parties can be determined with reasonable certainty, the court will apply an undirected payment accordingly. No doubt the justice of each case will best be promoted by carrying out the intention of the parties. In case an expressed intention cannot be found, one may be implied from the circumstances of the case. Every presumption and rule which the courts have adopted in further-

ance of their purpose to discover 'the justice of each case' is subordinate to this rule of intention."

See, also, Stanley v. Westrop, 16 Tex. 204; Phillips v. Herndon, 78 Tex. 378, 14 S. W. 857, 22 Am. St. Rep. 59.

[4] Now, there is in the record evidence that would support an application by the court either to the open account or to the secured note. There is this cogent circumstance that would support the trial court finding. It seems to be admitted that in the contract between C. S. Brown and plaintiff in error it was agreed that payments for all "extras" should be made in cash. From this circumstance the intention that the cash payment of $3,000, or so much thereof as was necessary, should be applied to the account for extras, could be implied. But its effect is, of course, not conclusive if there be other contrary evidence. We think there is. At the time the $3,000 payment was made, there existed the secured note indebtedness against the homestead, and likewise an open unsecured account for extras. This open account did not exceed $1,500, whereas the cash payment was $3,000. Obviously it was not intended that the payment as a whole should be applied to the open account, for the account was not thus large. These two circumstances would be sufficient, if relied upon, to sustain the finding in effect by the Court of Civil Appeals that the implied intention of the parties was to apply the payment to the secured debt, or at least that the trial court's finding was not justified. The Court of Civil Appeals having so held, and there being evidence in the record to support such a holding, we cannot reverse its judgment.

[5] It is next complained that—

"The Court of Civil Appeals erred in holding that plaintiff in error did not have a lien on the building and ground covered by the mechanic's lien contract to secure payment of extras and additions placed on the building at the request of the owner, the specifications having provided for changes and additions, and the mechanic's lien contract having referred to the specifications and same being a part of the mechanic's lien contract."

We have no doubt that a mechanic's lien contract executed by the husband and the wife in the manner and at the time required by law may create a lien upon the homestead for extras in the construction of improvements thereon. In the nature, of things whether improvements be enumerated in the original plans and specifications, or whether they be furnished under the contract as extras, they nevertheless may be secured by the lien. There is no reason why a lien may not exist to secure improvements whether furnished as "extras" or not. The question is: "What was the intention of the parties as to the extent of the lien created?" This of course, involves an examination of the

contract relied on. It is the contention of plaintiff in error that the lien was meant to secure all materials and labor furnished, including extras made necessary by change of plans and specifications, because the original contract itself provided that such changes might be made, while on the other hand it is the contention of defendant in error that the language of the lien contract is such as to limit the lien to the amount specifically named in the note mentioned in the contract. We agree with the latter contention.

The mechanic's lien contract executed by C. S. Brown and his wife, Jewel, provides:

"In consideration of the construction of said improvements and furnishing the labor and material therefor as above stipulated, the parties of the first part (Brown and wife) promise and agree to pay to the said party of the second part, his heirs or assigns, the sum of ($8,651.00) eight thousand six hundred fifty-one and no more dollars, in accordance with the terms of a certain promissory note of the said parties of the first part of even date herewith, payable to the said party of the second part or order, due ninety days from date with interest from maturity, etc., * * * said parties of the first part hereby give and grant to the said party of the second part, his heirs and assigns, an express contract lien upon the said land and premises and improvements to be erected thereon to secure the said indebtedness by note, together with all sums to become due thereon, and the said parties of the first part agree to the fixing of a mechanic's and materialman's lien upon the said premises and improvement to secure said indebtedness, and it is further agreed that the superior title to the said improvements shall remain in the said party of the second part, his heirs and assigns, until the said indebtedness is fully paid off and discharged. * * * If the said parties of the first part shall fail to procure said insurance, or to pay said taxes, as above stipulated, the holder of said note may procure the said insurance or pay said taxes, and add the amount so paid to the indebtedness, and the said amount so paid shall be secured by a lien upon said premises, and the same shall bear interest from dates of such payments at the rate of ten per cent. per annum."

It is thus clear as language can make it that the parties contemplated a lien upon the premises involved to secure the note mentioned, plus any payments for insurance or taxes made necessary by the Browns' default. The lien created by the instrument—and of course none other can exist—is limited to these items. If it had been intended to embrace the cost of extras furnished in the completion of the improvements, such intention could have been easily manifested. The particularity with which the items of insurance premiums and taxes are enumerated negatives the intention to include other items. Of course, an intention may be implied in a contract, and its binding force is as great as though it were expressed. But there is nothing in the lien contract that could possibly justify the implied intention to secure the cost of extras with the lien. It is apparent the husband and wife were willing that a lien should exist against their homestead to secure the debts specifically mentioned, and implication that they intended it to apply to other items will not be indulged unless the language of the contract clearly calls for such interpretation. It does not do so. The nature of the contract is not such as necessarily to imply the lien. It is true the contract stipulation that the plaintiff in error "agrees and contracts with the said parties of the first part to furnish all the labor and materials for, and to construct, erect, and complete upon the lands and premises hereafter described in a good workmanlike manner and in accordance with the plans and specifications agreed upon by the parties and signed by them for the purpose of identification, the following improvements, to wit." It is also true that the specifications referred to contain the following:

"The owner reserves the right at all times to make any changes that he may deem necessary to make this house just as he wants it, and the contractor will make any and all changes as asked by the owner or furnish a good reason for not doing so."

While these specifications by reason of the reference thereto in the lien contract became a part of such contract, nevertheless there is nothing in this clause authorizing changes to evidence any intention that the additional costs thereby shall be included in the mechanic's lien of the parties. Husband and wife might be entirely willing to contract for such changes, and that the husband should be personally liable for the immediate payment for the added costs, as he would be, but such would not imply that they intended these additional costs to become a part of the indebtedness specifically secured by the contract lien. We approve the holding of the Court of Civil Appeals upon this point.

[6] The only remaining assignment of error is:

"The Court of Civil Appeals erred in holding that in the absence of any application by a creditor, and in the absence of any direction as to the application by the debtor, that equity would apply a payment made to the discharge of a lien against a homestead rather than against an unsecured debt which was created in the building of a house on the homestead, the law being to the contrary."

What we have said under the first assignment of error necessarily disposes of this assignment also. It is not so much a rule of equity that controls the action of the court in applying payments, as it is the ascertainment of the intention of the parties from all the circumstances surrounding the payment.

[7] The Court of Civil Appeals held against defendant in error on his assignment com-

plaining of the trial court's overruling his plea in abatement, saying:

"The wife of appellant was not a necessary party to the suit to foreclose the mechanic's lien executed by her. Cooley v. Miller (Tex. Com. App.) 228 S. W. 1085."

The defendant in error has made no application for writ complaining of this ruling, and since we are affirming the judgment of the Court of Civil Appeals remanding the case, we have no authority to review it. We express no opinion whatever as to the correctness of this ruling.

We recommend that the judgment of the Court of Civil Appeals reversing and remanding the cause to the trial court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals. ·