## GRAVES et ux. v. HALLMARK.
### No. 6065.

Court of Civil Appeals of Texas.
Amarillo.

June 12, 1950.

Rehearing Denied July 10, 1950.

Berry & Ball, Lubbock, for appellants.

Crenshaw, Dupree & Milam, Davison & Irvin, all of Lubbock, for appellee.

PITTS, Chief Justice.

Appellee, Sam Hallmark, sued appellants, R. E. Graves and wife Helen A. Graves, for a debt alleged to be evidenced in part by a note and all of it secured by a mechanic's and materialman's lien. The suit arose out of a contract between the parties in which appellee agreed to furnish all labor and the material and construct improvements as a homestead for appellants on a tract of land owned by appellants and situated in Lubbock, Lubbock County, Texas. Before the construction began appellants executed a mechanic's lien note of date July 15, 1948, for $11,000 payable in 120 days to appellee for the construction of certain improvements to be made on the land in question. The note provides for the usual interest and attorney fees if placed in the hands of an attorney for collection. On the same date the parties executed and acknowledged a mechanic's and materialman's lien contract with appellants signing as parties of the first part and appellee signing as party of the second part. The same was filed for record in Lubbock County. The lien contract sets out in part that the parties of the first part executed a promissory note in the sum of $11,000, payable to the party of the second part, and that the parties of the first part gave, granted and conveyed to the party of the second part, his heirs and assigns, an express mechanic's and materialman's lien, as provided by the Constitution and laws of the State of Texas, upon the land in question and all improvements thereon, or that may thereafter be placed thereon, to secure the payment in full of the above mentioned indebtedness, principal, interest, and attorneys'. fees, and further to secure the performance of each and every covenant and obligation therein set out. The said contract also contains

a paragraph hereinafter set out concerning changes made during construction and extra costs for such, which would be secured by the lien. During the construction appellants made two payments to appellee of $2,000 each, aggregating $4,000, and they admit appellee is entitled to a balance due of $5,122.15 which sum they are willing to pay but they deny liability for any sums incurred by reason of extra costs added as a result of any changes made during the construction of the improvements.

Written specifications were never provided and the improvements were made on the premises upon agreed oral specifications. The construction had been completed and appellants had taken possession of the premises before the trial of the case. Both parties pleaded the execution of the note and the mechanic's and materialman's lien contract and both parties rely on the said lien contract for recovery, appellants seeking to have their title quieted. Appellee pleaded certain changes made in the improvements during construction at the request of appellants, by reason of which changes extra costs were incurred for all of which he sues and seeks a foreclosure of the lien upon the same.

The case was tried to a jury and judgment was rendered upon the verdict for appellee on the note and mechanic's and materialman's lien, including interest and the costs for extras, for a total sum of $12,075.58, after allowing for certain credits and making certain deductions for offsets, and for a foreclosure of the said lien to cover it all and an additional personal judgment only was rendered for the sum of $1207.56 as attorney fees, which latter sum was not secured by the said lien. Appellants perfected their appeal and predicate the same upon two points of error.

In point one they charge that the trial court erred in overruling their exceptions to appellee's alleged cause of action because the same sought to change or vary the terms of a written, signed, acknowledged and recorded mechanic's and materialman's lien contract for improvements made on appellants' homestead. In reply to appellants' first point appellee urges that he has not sought to change or vary the terms of the lien contract in question. On the contrary, he asserts that he pleaded the said lien contract and the note in question and relied on them and especially the terms of the lien contract for recovery.

The jury found, in effect, that the parties entered into a contract on or about July 15, 1948, to construct the improvements in question and executed the lien contract in question; that appellant, Helen A. Graves, was present when the said lien contract and note were executed and delivered by appellant, R. E. Graves, to appellee and that she signed and gave her consent to the lien contract; that the parties entered into an oral agreement relative to the specifications for the construction of the improvements; that the improvements were constructed by appellee under the direction of appellant, R. E. Graves, and that appellant, Helen A. Graves, also assisted in directing the construction of the improvements; that during the progress of construction both appellants directed appellee to make alterations and add certain extras to the improvements which increased the cost over and above the original cost contemplated; that one of the said changes made was to increase the floor space of the five room house from 900 square feet to 1140 square feet at an increase in cost of $2,000; and that other alterations and extras were authorized by appellants which increased the cost of construction to the sum of $3,806 over and above the original cost price agreed upon. The jury also found, in effect, that appellants were entitled to an offset of $150 because of a defect in the foundation of the house and appellants were allowed a credit on the judgment for such a sum. The costs of the said extras and alterations added to the original cost price of $11,000 agreed upon aggregates the sum of $14,806, which sum, less deductions made for previous payments made by appellants in the sum of $4,000 and the offset allowed them in the sum of $150, together with interest on the final aggregate sum of $10,656, justifies the amount of the judgment for $12,075.58 rendered by the trial court as the balance of the debt due, except for the attorney

fees which is a personal judgment only for the sum of $1207.56, or ten per cent of the debt.

Nowhere do appellants challenge the findings of the jury or question the sufficiency of the evidence to support such findings. It therefore appears that a proper construction of the lien contract in question and particularly of one paragraph therein contained will determine the controlling issue in this case. That particular paragraph in question of the lien contract makes the following provision:

"It is further expressly contracted and agreed that the plans and specifications above referred to, authorize the making of changes in same by which extra costs may be incurred and any such extra costs, not to exceed the sum of $[blank], incurred in accordance with the right reserved to parties of the first part to make such changes shall be secured by the liens herein given and granted as fully as if such amount were included in the original contract price."

Appellants contend that because of the uncertainty of the amount of costs for extras reflected by the language used in the foregoing paragraph and because the space left for the maximum sum to be spent for extra costs authorized was left blank the lien cannot be legally foreclosed and enforced as against any extra costs for alterations on the construction of the improvements as a homestead. In support of their contentions they cite in particular Article XVI, Section 50, of the Texas Constitution, Vernon's Ann.St. Const., Article 5460 of Revised Civil Statutes, and the case of Rice v. Brown, Tex. Civ.App., 290 S.W. 784, affirmed Tex. Com.App., 296 S.W. 495.

The language used in the lien contract did not purport to secure only the note for $11,000 but it also purports to secure the costs for changes made and extra costs added as well. The lien contract mentioned the said note and among other provisions it contains the following recital: " * * * to secure the payment in full of the above mentioned indebtedness, principal, interest and attorneys' fees, and further to secure the performance of each and every covenant and obligation herein set out." This provision is consistent with and supports the provisions recited later in the paragraph of the lien contract hereinabove quoted concerning changes made by parties of the first part and extra costs therefor, which are secured by the lien contract as recited in above paragraph. It will be noted again that the trial court's judgment was based upon the note and the mechanic's and materialman's lien contract, which lien contract recites that it was given to secure the payment of the note and further to secure the performance of each and every other covenant and obligation set out in the said lien contract.

The portion of Section 50, Article XVI of our State Constitution, which controls the disposition of this question, is as follows: "The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except * * * for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead."

Justice Martin speaking for this Court in construing the foregoing provisions of the Constitution in the case of Standard Savings & Loan Ass'n v. Davis, Tex.Civ. App., 85 S.W.2d 333, 334 (writ refused), said: "The right to a homestead, and to a materialman's lien on the same for improvements thereon, if in writing, are both creatures of the Constitution. The one is no more sacred than the other. Undoubtedly, the authors of the above article had in mind the encouragement of real home ownership, knowing that a naked lot without a house was a shelterless possession for a family. We believe this constitutional provision should be liberally construed in the spirit of its exalted purpose."

Article 5460, cited by appellants, provides for the execution of a lien contract, such as was executed by the parties in this case, when improvements are to be made on the homestead of a married couple and it requires the signing of the same by

the wife "privily acknowledged by her". Appellant, Mrs. Helen A. Graves, testified, in effect, that such was done in the execution of the lien contract here involved; that the whole contract was read to her and fully explained to her by their attorney and she understood all of the terms of the same before signing it. She further testified that she understood that they would be liable for any additional costs incurred for changes made by them during construction and that such would increase the costs for changes made but she testified that they did not make any changes or authorize any to be made during construction. Such was a disputed issue but the jury found against appellants on the issue and they have not challenged the jury's finding.

Appellants cite and rely on the case of Rice v. Brown, supra. There is a distinction between that case and the one at bar. In that case the court had before it a mechanic's lien contract which did not provide for extras or alterations to be therein secured by a valid lien, while the lien contract before us specifically provides that any extra costs incurred by reason of changes authorized by appellants "shall be secured by the liens herein given and granted as fully as if such amount were included in the original contract price." It is our opinion in view of the record before us that the fact that there was no maximum limit placed on the amount to be expended for extras and alterations in the lien contract before us is not of any significance and that it certainly does not invalidate the lien contract. The jury found changes, alterations and extras were authorized by appellants during the construction of the improvements and it further found the amount of the costs of such. Appellants do not challenge such findings of the jury.

Appellee likewise cites the case of Rice v. Brown, supra, in support of his contentions here made. The Commission of Appeals there said in 296 S.W. 495, 496:

"We have no doubt that a mechanic's lien contract executed by the husband and the wife in the manner and at the time required by law may create a lien upon the homestead for extras in the construction of improvements thereon. In the nature of things, whether improvements be enumerated in the original plans and specifications, or whether they be furnished under the contract as extras, they nevertheless may be secured by the lien. There is no reason why a lien may not exist to secure improvements whether furnished as 'extras' or not. The question is: 'What was the intentions of the parties as to the extent of the lien created?' This of course, involves an examination of the contract relied on.

\*     \*     \*     \*     \*     \*

"If it had been intended to embrace the cost of extras furnished in the completion of the improvements, such intention could have been easily manifested. The particularity with which the items of insurance premiums and taxes are enumerated negatives the intention to include other items. Of course, an intention may be implied in a contract, and its binding force is as great as though it were expressed. But there is nothing in the lien contract that could possibly justify the implied intention to secure the cost of extras with the lien."

In that case the lien contract did not provide for extras but in the case at bar the lien contract expressly provides for authorized changes by appellants and for extra costs therefor to be added and secured by the lien. The intentions of the parties are there clearly expressed. Thus the Commission of Appeals held in the Rice v. Brown case that a mechanic's and materialman's lien contract, such as we have in the case at bar, is valid and secures the extra costs for authorized changes. It is therefore our opinion that the said authority supports appellee's position here presented and does not support appellants' contention.

In support of their contentions made appellants also cite the case of Kepley v. Zachry, 131 Tex. 554, 116 S.W.2d 699, 702, and 131 Tex. 554, 121 S.W.2d 595 by the Commission of Appeals and quote from it as follows: "This contract *must be in writing* as is required by the Constitution, and by *its express terms* should stipulate the work is to be done in improving the homestead, *and the cost thereof*." It must be ob-

served however that the Commission of Appeals, with the approval of the Supreme Court, expressly withdrew the quoted statement in its supplemental opinion reported in 131 Tex. 554, 121 S.W.2d 595, and held that the statement was neither approved nor disapproved but was not necessary to a decision of the case. It therefore appears that the said case being comparatively a recent case is not authority to determine the issues here presented.

According to the record appellants had taken possession of the premises in question before the trial was had in the trial court and thereby accepted the benefits of the labor and material furnished by appellee to construct the improvements on their homestead. However they seem to contend that unless the cost of the improvements placed on a homestead is a fixed sum stated in the lien contract, such a lien is not valid as against the homestead. The usual lien contract, and particularly the one in the case at bar, requires the owners to keep all taxes paid and the improvements properly insured. These amounts cannot be fixed or made specific, yet they are usually considered binding and valid claims properly secured by such a lien contract.

It was held in the case of Turbeville v. Book, Tex.Civ.App., 226 S.W. 814, that the lien is fixed by a contract in writing which complies with the provisions of the Constitution and the Statute. It has also been held that specifications may be orally agreed to in such a case and may be shown by parol provided a lien contract is in writing and in proper form. Hufstedler v. Glenn, Tex.Civ.App., 82 S.W.2d 733.

■ It is our opinion under the authorities cited that the lien contract in the case at bar was executed in compliance with the provisions of the State Constitution and the laws of the State and that the changes, alterations and extras authorized in the construction of the improvements did not change or vary the terms of the lien contract but that such was done in compliance with the terms of the said contract and were therefore secured by the same and were valid and binding on appellants whose point number one to the contrary is over-

ruled. We further cite the case of Zollars v. Snyder & Lacey, 43 Tex.Civ.App. 120, 94 S.W. 1096, in support of our holding.

■ Appellants' second point complains because the two payments made by them to appellee aggregating the sum of $4,000 were applied by appellee on the extra costs incurred by reason of changes made in the improvements during construction rather than being applied on the original note and indebtedness, but this point is not now material in view of our holding already made to the effect that the entire debt was secured by the lien contract. However the jury found that appellants did not direct appellee where and how to apply such payments when they were made and appellants have not complained about such a finding. The Commission of Appeals held in the case of Rice v. Brown, supra, cited and relied on by appellee that: "* * * the debtor has the right to make application of his payment, but in the event he fails to make such application, the creditor then may do so. In the event neither party makes application of the payment, the court will apply it." Applying the rule there stated we find that inasmuch as appellants, debtors here, had the right to say where the payments in question should be applied but failed to exercise that right, as found by the jury, appellee as creditor here had the right to make application of the payments as he saw fit. Appellants' second point is therefore overruled. However, as previously stated the second point is not now material.

■ We find a voluminous record in this case. The statement of facts contains 665 pages and is replete with photostats purporting to be copies of instruments introduced in evidence. There are approximately 100 pages of such photostats found in the statement of facts. This court has condemned such a practise before. Many of the photostats are blurred and hardly legible. They are hard on the eyes and such a practise does not comply with the rules of procedure governing such a matter when it is not shown that the original instruments could not have been copied in the statement of facts or that they could not have been

sent up for our inspection by order of the trial court. Hodges v. Leach, Tex.Civ. App., 214 S.W.2d 837; Higgins v. Robertson, Tex.Civ.App., 210 S.W.2d 250; Continental Fire & Casualty Ins. Corporation v. Whitlock, Tex.Civ.App., 210 S.W.2d 261.

A careful examination of the record and the briefs reveals no reversible error and the judgment of the trial court is affirmed.