NATIONAL SECURITY LIFE & CASUAL-
TY COMPANY OF DALLAS, Texas,
Appellant,

v.

Clarkie K. GOOCH et vir., Appellees.

No. 6581.

Court of Civil Appeals of Texas.

Amarillo.

March 26, 1956.

Wright & Waters, Lubbock, for appel-
lant.

Carlton Webb, Post, for appellees.

PITTS, Chief Justice.

This appeal is from a judgment awarding
hospitalization and medical expenses to-
gether with attorney fees and penalty,
claimed by appellees, Clarkie K. Gooch and
husband, N. Paul Gooch, against appellant,
National Security Life and Casualty Com-
pany of Dallas, Texas, as a result of the ill-
ness of appellee, N. Paul Gooch, while cov-
ered by an insurance policy issued to ap-
pellees by appellant. The record reveals
that said Policy Number MI100–2774 was
issued on October 10, 1952, and was in full
force on June 23, 1954, when appellee, N.
Paul Gooch, suffered a heart attack which
required hospitalization for a period of 41
days together with medical treatment. As a
result of such illness, appellees filed a claim

under the terms of the policy with appellant's legal agents, who refused to pay the claim, which resulted in the filing of this suit on January 3, 1955.

In the trial court, appellant sought to defeat appellees' claim for hospitalization and medical expenses on the alleged grounds that material misrepresentations were made to its agent by appellees in their application for the insurance and it sought to defeat appellees' claim for attorney fees and 12% penalty for the alleged reason that it and its policy are not subject to such attorney fees and penalty under the provisions of the law. The case was tried to the court without a jury as a result of which appellant's contentions were overruled by the trial court, which awarded appellees the sum of $552.20 to cover hospital and medical expenses under the terms of the policy, together with 12% of the foregoing sum as a penalty and attorney fees in the sum of $250, from which judgment appellant perfected an appeal.

The statement of facts presented is replete with photostats of instruments which form the basis for this law suit. Such photostats are very tiring and injurious to the eyes of a reader, for which reasons the use of such have been condemned by our appellate courts. Graves v. Hallmark, Tex. Civ.App., 232 S.W.2d 130; The Western Union Tel. Co. v. Texas Employment Commission, 150 Tex. 526, 243 S.W.2d 154, and other authorities cited by the opinions in these cases.

█ In its brief, appellant charges error in Point No. 1 because the trial court refused to admit in evidence its certificate of authority issued by the Texas Board of Insurance Commissioners, properly authenticated, showing it to be a state mutual assessment company operating under the provisions of Chapters 13 and 14 of the State Insurance Code, V.A.T.S., at the time the policy was issued to appellees and that it was not therefore subject to the penalty and attorney fees awarded appellees by the trial court. In its Bill of Exception Number 1, appellant attaches thereto its said certificate of authority showing its right to so operate from March 7, 1952, until May 31, 1953, during which period of time the policy was issued, and the certificate of authority supports appellant's contentions here made to the effect that it was operating under the provisions of Chapters 13 and 14 of the Insurance Code as a statewide mutual assessment company. Appellees objected to its admissibility solely on the grounds that such was not the best evidence of its authority. The said certificate of authority was admissible in evidence under the provisions of Article 1.23 of the Insurance Code and should have been admitted in evidence. Appellant also offered a similar certificate of authority showing it was still operating in the same manner but its admissibility was refused. Chapter 13 of the Insurance Code is entitled and pertains to "Statewide Mutual Assessment Companies" and Chapter 14 thereof is entitled and pertains to "General Provisions For Mutual Assessment Companies". The face of the policy introduced and relied upon by appellees for recovery denominates it as a policy "issued by National Security Life and Casualty Company of Dallas, Texas, A Statewide Mutual Life, Health and Accident Company."

█ In construing the law governing the operation of mutual assessment insurance associations, it has been held that such are not liable for penalties and attorney fees when it appears that the company is governed by such statutes. American Casualty & Life Co. v. Hale, Tex.Civ.App., 198 S.W.2d 759, wherein the case of General Life Ins. Co. v. Potter, Tex.Civ.App., 124 S.W.2d 409, was cited in support thereof. The insurance laws have been recodified since the foregoing cases were heard and disposed of and compiled into the Insurance Code, effective since September 7, 1951. But an examination of the new Insurance Code reveals no change made contrary to the construction of the previous insurance law as announced by the courts in the cases previously cited pertaining to 12% penalty and attorney fees. For the reasons stated, it was error for the trial court to refuse the admission in evidence of appellant's certificate of authority of

fered, which certificate is properly before this Court and when considered, together with evidence offered, it conclusively appears that appellant was governed by the provisions of Chapters 13 and 14 of the Insurance Code, which provisions do not authorize the penalty and attorney fee awarded appellees by the trial court.

Appellant complains because the trial court refused to admit in evidence its Exhibit No. 3 which was certified copies of proceedings had before the Texas Industrial Accident Board concerning an injury sustained by appellee, Paul Gooch, on October 15, 1947, while employed at Andrews, Texas. According to appellant's Bill of Exception No. 3 presented by it in support of its claims, such exhibit was offered for the purpose of seeking to impeach the testimony of appellee, Clarkie K. Gooch, concerning her statements made about the health of appellee, N. Paul Gooch, at the time the application for the insurance was signed by her and for the further purpose of showing the seriousness and duration of the injuries Paul Gooch received on the said date. Appellees objected to the introduction thereof on the grounds that such proceedings concerning the injuries received by Paul Gooch on October 15, 1947, was not material to any representations thereafter made by appellee, Clarkie K. Gooch, which resulted in issuing the policy five years later on October 10, 1952, and upon further grounds that no showing had been made even indicating that there was any connection between the injuries received by Paul Gooch on October 15, 1947, and his subsequent heart attack on June 23, 1954. The trial court sustained appellees' objections and declined to admit such exhibit in evidence.

The evidence reveals that appellee, Clarkie K. Gooch, signed the application for the policy covering herself and her husband on September 30, 1952, and gave the answers to the questions therein propounded. In question No. 5, she was asked, "Are all applicants now in good health and free from any physical or mental defects or abnormalities?" to which she replied, "Yes." In question No. 8, she was asked, "Has any applicant, within the past three years, had medical or surgical advice or treatment or any illness or injury?" to which she replied, "No." At the trial, she testified positively that such statements previously made by her were true and she did not retract them. No testimony was given or offered to the contrary. She further testified that her husband, N. Paul Gooch, was seriously injured in 1947 and was compensated therefor but he had since recovered prior to 1952, at which time she made the statements being here challenged and that he had worked every day from 1950 until he had the heart attack on June 23, 1954, and had worked some since the heart attack.

The only medical testimony was that given by the Goochs' family physician, Doctor D. C. Williams, who testified that he examined and treated appellee, Paul Gooch, for the heart attack and that he had visited him in his home when he had the flu some weeks previously to the heart attack; that when he examined him on June 23, 1954, at the time he had the heart attack, he obtained his previous medical history but did not concern himself much about such history because his then condition was not influenced by any previous history; that his heart attack had developed suddenly for the first time within a few minutes before he saw him; that it was an emergency case and the patient was seriously ill; and that he did not believe Paul Gooch's previous injuries in 1947 contributed to his illness from the heart attack on June 23, 1954.

After the foregoing oral testimony of Clarkie K. Gooch and Dr. Williams was heard, appellant offered its Exhibit No. 3 for the purposes previously herein stated and such was not admitted. Appellees admitted that Paul Gooch received serious injuries in 1947 but he had since recovered prior to 1952. Dr. Williams, 41 years in the practice, testified that in his opinion the previous injuries did not contribute to the subsequent heart attack. No testimony was offered to refute that given by Clarkie K.

Gooch and Dr. Williams. The inquiries in the application for insurance were confined to the date therein shown of September 30, 1952, and for only three years previous thereto. An examination of appellant's Exhibit No. 3 reveals no statements therein made that would refute the subsequent oral testimony given by Clarkie K. Gooch or Dr. Williams or that would throw any light on the physical or mental condition of Paul Gooch 5 or 7 years after he received the injuries on October 15, 1947, about which appellant's Exhibit No. 3 was confined. Appellant pleaded material misrepresentations of appellees as a defense and therefore assumed the burden of proving both false representations and the materiality thereof. Its Exhibit No. 3 had no tendency to do either. It was therefore not error, and certainly not a reversible error in any event, for the trial court to refuse the introduction of appellant's Exhibit No. 3.

Appellant requested findings and conclusions of the trial court, which were filed. It has challenged the findings of the trial court to the effect that the insurance policy had been in full force and effect for more than two years and was not cancellable and was incontestable and to the effect that Paul Gooch was in good health and free from any physical or mental defects or abnormalities at the time the application was signed and that no misrepresentations were made in the application. Concerning the first finding here challenged by appellant, the trial court further found that all premiums were paid by appellees and accepted by appellant for more than a two year period. The proof conclusively reveals that appellees paid the premiums consistently on the policy from October 10, 1952, until November 10, 1954, which is more than two years. Appellees filed their suit on January 3, 1955, and appellant answered and denied liability on January 27, 1955. Appellee, Paul Gooch, suffered the heart attack on June 23, 1954, while the policy was in full force and appellant accepted payment of premiums for five months thereafter. On the face

of the policy we find the following language:

"This Policy is non-Cancellable and Guaranteed Renewable for Life after two years from date of issue.

This Policy Provides Benefits for Hospital Expense for sickness and for Injuries sustained through Accidental Means and Certain Other Benefits to the Extent Herein Provided, Regardless of Workmen's Compensation."

Under "Additional Provisions," Section (a) of the policy, we find the following language:

"This policy shall be non-cancellable and incontestable after having been in force during the lifetime of the Insured for a period of two years from the date of issue, except for non-payment of premiums."

Concerning the question of appellees' health, they represented in effect, both in the application and in the testimony given at the trial, that they were in good health at the time the application was signed.

"The term 'good health' is comparative, and does not mean absolute perfection. It means that the insured has no grave, important or serious disease, and is free from any ailment that seriously affects the general soundness or healthfulness of the system * *

" 'It may be that the word "Insurability," as applied to life insurance as understood by insurance companies has a meaning more comprehensive than that of good health and an insurable interest; but such is not its ordinary and plain meaning and the popular sense in which it is understood, and when used in an insurance contract it must be given its plain and ordinary meaning.' " 24 Tex.Jur. 939–940, Sec. 188.

█ In our opinion, there is ample evidence of probative force to support the

trial court's findings challenged by appellant and this Court is bound by them. Findley v. Southern Sales Co., Tex.Civ.App., 229 S.W.2d 421; Kennedy v. General Geophysical Co., Tex.Civ.App., 213 S.W.2d 707; Barrick v. Gillette, Tex.Civ.App., 187 S.W.2d 683.

For the reasons stated, the judgment of the trial court is reversed and rendered as to the award of 12% penalty and. $250 attorney fee to appellees and we here deny appellees any recovery for such claims but the trial court's judgment otherwise is affirmed. Reversed and rendered in part and affirmed in part.